B104 (FORM 104) (08/07)

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|
| **PLAINTIFFS**<br>VICKY RODRIGUEZ TORRES | **DEFENDANTS**<br>ENID LOPEZ; GUILLERMO CAMBAS; MARIELA REXACH, et als |
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>WILLIAM E. MELENDEZ<br>410 Park Avenue; 15th Fll, Suite 1233<br>New York, NY 10022 | **ATTORNEYS** (If Known)<br>SONIA COLON, ESQ. |
| **PARTY** (Check One Box Only)<br>☒ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor ☐ U.S. Trustee/Bankruptcy Admin<br>☒ Creditor ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Adversary proceeding: 18 USC 1030; 2510; 2701; 42 USC 1983; 1985; 1988; Torts

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $1,500,000.00 |
| Other Relief Sought | |

B104 (FORM 104) (08/07), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR<br>VICKY RODRIGUEZ | | BANKRUPTCY CASE NO.<br>09-10864 | |
| DISTRICT IN WHICH CASE IS PENDING<br>PUERTO RICO | | DIVISION OFFICE<br>SAN JUAN | NAME OF JUDGE<br>BRYAN K. TESTER |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br>[signature] | | | |
| DATE<br>AUGUST 9, 2010 | | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>WILLIAM E. MELENDEZ | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: Vicky Rodríguez-Torres<br>Debtor<br>_____<br>Vicky Rodríguez-Torres<br>Plaintiff<br><br>v.<br><br>Enid López-López<br>Guillermo Camba-Casas<br>Mariela Rexach-Rexach<br>Government Development Bank PR<br>John Doe, Richard Roe, Freddie Moe,<br>all of which are fictitious names<br>representing employees or agents of the<br>Government Development Bank PR, whose<br>identities are unknown at this time | 09-10864-BKT7<br>Chapter 7<br><br>ADVERSARY PROCEEDING<br><br>18 U.S.C. § 1030,<br>18 U.S.C. § 2510,<br>18 U.S.C. § 2701,<br>42 U.S.C. § 1983,<br>42 U.S.C. § 1985,<br>42 U.S.C. § 1988,<br>TORTS |

## COMPLAINT

TO THE HONORABLE COURT:

Now comes Debtor, through the undersigned attorney, and respectfully alleges and prays as follows:

### I. INTRODUCTION

1. This is an adversary proceeding for the Tort of intentional *Spoliation of Evidence*, and related causes of action arising under the *Computer Fraud And Abuse Act, Wiretap Act, Electronic Communications Privacy Act,* and *Stored Communication Act*, as well as other related violations of Debtor's civil rights committed by defendants. The claims, filed on behalf of Debtor, arise from the acts and omissions of defendants, when all throughout the time period starting on or around October, 2008, and uninterruptedly until the present

day, they conspired to commit and committed the tort of spoliation of evidence, with the deliberate intent and actual effect of interfering with Debtor's Civil Actions brought against Defendants in the United States District Court for Puerto Rico, case number 09-01151-JP, and case number 09-02199-FAB. Defendants conduct was in abuse of their official governmental power, and in abuse of judicial process.

2. Debtor also files these actions against unnamed employees or agents of GDB, whose identities are unknown at this time, who during all times relevant to this complaint occupied in-house legal counsel and Information Technology positions and functions, all of whom were deliberately indifferent to Debtor's rights and caused the damages alleged, due to their acts and omissions, including but not limited to their failure to adequately supervise, evaluate, discipline, assign and monitor other GDB employees, contractors or agents directly involved in the unlawful conduct causing damages to Debtor. Debtor also brings this action against as yet unidentified other persons, employees and agents of GDB, whose actions and omissions were taken in deliberate indifference to Debtor's rights and proximately caused the injuries herein alleged. Debtor's claims of damages are based on the violation of rights guaranteed under the Constitution and laws of the United States and Puerto Rico.

3. Co-defendants' actions deprived Debtor of her due process rights.

## II. JURISDICTION

4. This action is brought pursuant to **28 U.S.C. § 157(b)(2)(A), (C), (I), (J),** and **Fed. R. Bankr. P. 7001(1)**, as it pertains to proceedings matters concerning the administration of the estate, and to counterclaims by the estate against creditor GDB. This action also pertains to determinations as to the dischargeability of particular debts withdrawn by Trustee Wigberto Lugo Mender (See: **Doc.# 57**), and to the objections to the discharges filed by GDB (See: **Doc.# 52**), as well as to other proceedings affecting the liquidation of the assets of the estate.

5. This action is brought pursuant to **18 U.S.C. § 1030**, et. seq., **18 U.S.C. § 2510**, et. seq., **18 U.S.C. § 2701**, et. seq., as it relates to Defendants' execution and conspiracy in furtherance of computer crimes which provide civil remedies to Debtor.

6. This action is brought pursuant to **42 U.S.C. § 1983**, as it pertains to deprivation of rights under color of state law.

7. This action is brought pursuant to **42 U.S.C. § 1985**, as it pertains to the interference with Debtor's Civil Actions, amounting to actionable obstruction of justice.

8. This action is brought pursuant to **42 U.S.C. §1988**, Civil Rights Attorney's Fee Act.

9. This is the proper venue to bring this action, since the estate and all its assets, liabilities, and claims are within the jurisdiction of this District Court.

## III. PARTIES

10. Debtor is a former employee of creditor GDB.

11. Creditor and co-defendant GDB is a Puerto Rico governmental public corporation created under **7 L.P.R.A. § 551**, et. seq.

12. Co-defendants Enid López-López (**López**), Guillermo Camba-Casas (**Camba**), as well those unnamed but identified by the fictitious names John Doe, Richard Roe, Freddie Moe, are at all times relevant to this complaint employees of GDB.

13. Co-defendant Mariela Rexach-Rexach (**Rexach**) is at all times relevant to this complaint legal counsel representing co-defendants López, Camba, and GDB.

14. The aforementioned co-defendants directly caused the injuries to Debtor, and the violation of her civil rights, when they unlawfully and willfully lost, transferred, concealed, and destroyed evidence in possession and under the exclusive control of GDB, and which was essential to Debtor's ability to make a successful claim in two separate causes of action filed against, *inter alia*, co-defendants López, Camba, and GDB, therefore proximately causing significant prejudice to Debtor.

15. Rexach, as well as other Supervisory, unnamed, and yet unknown co-defendants also caused injury to Debtor by their actions and omissions in failing to prevent other co-defendants from engaging in unlawful and willful loss, transfer, concealment, and destruction of evidence.

16. At all times relevant to this complaint, all co-defendants were acting under color of the law of the Commonwealth of Puerto Rico.
17. Defendants are all sued in their personal capacities.

### IV. FACTUAL ALLEGATIONS

18. Rodríguez filed her first claim for discrimination against her then employer, GDB, with the Puerto Rico Office of the Equal Employment Opportunity Commission("EEOC") on November 18th, 2008. She subsequently filed case number 09-01151-JP in the United States District Court on February 17th, 2009.
19. At issue, were Rodríguez' allegations that she had been routinely singled-out to be excluded from work-related activities, communications, and career development opportunities, all based on a discriminatory animus against her.
20. Prior to and during the progress of the case, López was Rodríguez' direct supervisor. Guillermo Camba-Casas (Camba) was GDB's Human Resources Director and records custodian. Mariela Rexach-Rexach (Rexach) was counsel representing GDB in the case.
21. During the discovery process in the case, Rodríguez took a deposition on López, in which she directly questioned the deponent in regards to career development related communications from which Rodríguez had been singled out to be excluded, for no apparent legitimate reason. All other

similarly situated individuals, however, were included in said communication.

22. During the examination, and as an explanation as to why she had failed to disclose or produce e-mail communications which she should have authored or received, López readily admitted to routinely deleting communications from GDB's electronic messaging system. Rodríguez, in response, promptly brought to the attention of the District Court her concern over GDB's deliberate destruction of relevant electronic documents.

23. López justification for such evidence destruction was that she had to do so in order to prevent her mailbox from becoming full.

24. López further admitted that she had failed to retain any electronic copies of any e-mail that might have been related to the scheduling of the training sessions at issue, and which were material to Rodríguez' claims in the case.

25. López further made the disclaimer that she would be unable to produce any e-mail communications in native electronic format that had been issued as recently as April, 2008, eventhough GDB had massive back-up and restoration capabilities, and even considering that GDB was under the obligation of having placed a litigation and preservation hold starting on November, 2008.

26. In effect, López asserted that any electronic documents that she had deleted, were effectively and permanently unrecoverable. López was unable to explain, however, how certain GDB employees were able to have mailbox configurations

which extended to a size of 6,105.13 of Megabytes, or "MB", while hers meagerly extended to a size of 496.32 in the same unit of measure.

27. Rexach, on the other hand, failed to advise GDB that a litigation hold had to be instituted by GDB, in order to preserve any potentially responsive and relevant evidence in the above litigation, and to recover any electronic evidence which could have been improvidently deleted.

28. Rexach further failed to adequately supervise and monitor GDB's evidence collection, recovery, preservation, retrieval, and production throughout both causes of action brought by Rodríguez.

V. <u>GDB's ELECTRONIC MESSAGING AND COLLABORATION ARCHITECTURE</u>

29. GDB employs the *Microsoft Exchange Server 2003 Enterprise Edition* software (**Exchange**), spread out in approximately 40 Intel-based server computers.

30. Exchange has robust centralized control and data protection features that protect GDB from data loss which could inevitably carry serious regulatory and financial risks. Said control features are implemented through a distributed file directory-tree system, regardless of the number of the computer servers hosting the application, which easily and significantly not only prevent unauthorized and accidental distribution of data, but also its destruction.

31. The above wide range of information protection and control features are implemented by ***Exchange Software System***

7

*Administrators* (**Administrators**), who fine tune Exchange configurable-parameter policies, so that the right level of control is automatically applied to databases, file-systems, and individual messages, based on specific senders, recipients, content, and the organizational unit within which each GDB employee works. For the obvious internal control, segregation of duties, audit and regulatory mandated reasons, Administrators belong to an enterprise's Information Technology organization, removed from all the business and transaction originating organizations.

32. Exchange stores its information in five (5) **Storage Groups** per server. Each storage group can have as many as five (5) **Databases**, and each database stores up to sixteen (16) **terabytes**. Each terabyte equals one-million **megabytes**, which is roughly equivalent to one-billion pages of information. In other words, stored strictly and exclusively only in Exchange, GDB has the storage capacity of 3,520 billion pages worth of electronic documents.

33. Exchange databases storage structure keeps messages in a **Single Instance** architecture, whereby messages are not kept as discrete, duplicate items, repeated once for each targeted mailbox which happens to be the recipient of the given message. Instead, each "*virtual message*" is kept once, broken-down in its different informational objects in multiple transaction logs, and is assembled on-the-fly, when accessed or invoked by each "*virtual recipient*" or computer user.

34. Administrators define **Security and Distribution Groups**, each with its unique security identifier, based on the different functional groups, divisions, and departments of the enterprise organization. Groups are subsequently divided in **Roles**, and **Projects**, within the different groups, and this most basic level of organizational granularity is then assigned **restrictions**, **permissions**, and **storage limits**. Individual user accounts, per employee, are then assigned to the different organizational units, and inherit the characteristics, controls, and limitations defined for that particular unit.

35. The storage limits thus defined by the Administrators for each mailbox, include parameters to control **Deleted Item Retention Time**. When an individual business-function user – who does not have Administrator-level privileged access to the most sensitive Exchange commands – deletes an e-mail, contact, event, or appointment information object, said object is not actually deleted from the Exchange Information Store, but instead, hidden from the user and kept for the specified period of time configured by the above retention parameter.

36. Alternatively, Administrators can, in lieu of a retention time period, configure a parameter that retains deleted items indefinitely, until the mailbox store is successfully backed-up. In any event, the above retention parameters allow Administrators to quickly and easily salvage deleted items,

without the necessity of a more cumbersome and time-consuming process of restoring the mailbox from back-up media storage.

37. Exchange back-up and recovery functionally protects its information against database corruption, hardware failure, accidental loss, and even deliberate destruction of e-mail messages. These utilities are defined and controlled by Administrators to run, once properly configured, automatically without human express intervention. As individual mailboxes are defined and assigned to each individual user, they represent the smallest unit of recovery than can be processed by the back-up and recovery utilities.

38. ***Transactions***, on the other hand, control all changes that occur in a database. Exchange's failsafe functionality to ensure proper flow and recoverability of message data further includes the capability of maintaining activity, message, transactional, and monitoring logs. Through these logs, Exchange databases can be restored to reflect their state or snapshot at any given point or moment in time. Messages can be recovered by searching and retrieving from the logs based on individual message identification, by sender, by server hosting or processing the message, by recipient, by date, or virtually any search-string definable.

39. For López, as a "Financial end-user" to have been able to permanently destroy the electronic documents at issue, to the point that they could not even be recovered within a limited and relatively recent time-frame, she necessarily would have

had to access Administrator privileged and sensitive capabilities, where retention periods and transaction logs with which the missing documents could have been recovered were altered, and said documents irremediably lost.

## VI. **FIRST CAUSE OF ACTION**

40. Plaintiff repeats and realleges each and every preceding paragraph of this complaint.

41. López deliberately deleted and destroyed e-mail communications from the GDB message and collaboration system, such that they were rendered permanently unrecoverable through any of GDB's technical or administrative data-loss response systems or capabilities: the KPMG Business Continuity Plan, Evertec and IBM Tivoli or equivalent storage management software, Exchange native back-up and restore utilities, or Exchange monitoring and transaction logs.

42. López, as a business computer user with a financial, legal, and administrative background, and without any Information Technology expertise, function o responsibility, or authority to execute Administrator privileged, sensitive transactions or to define software configuration parameters, improperly gained access to GDB computers and software, whereby she effectively was able to perpetrate the evidence destruction, with the intended result that incriminating communications which were adverse to her interest in litigation, would be permanently lost.

43. López, after obtaining a limited level of initial access authority proper to her role as a business user, obtained access to highly protected information in the form of the forbidden virtual space of the Exchange configuration parameters, that she was not entitled to access according to GDB policy.

44. Consequently, López intentionally and deliberately accessed a computer without authorization or in excess of authorization, through which she took specified forbidden actions, ranging from obtaining and changing software behavior and response, to damaging a protected computer or computer data in the records of a financial institution.

45. Plaintiff suffered damages in the form of increased litigation costs, as well as medical expenses, and pain and suffering which aggravated her delicate mental and physical condition, costs incurred, and consequential damages, aggregating in excess of $500,000.00

46. López' actions as outlined above violate the provisions of the **Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030, et seq.**

47. Co-defendants Camba, Rexach, and other still unknown GDB Information Technology and In-house Counsel officials, facilitated López' actions, and further conspired with López to violate the CFAA.

48. The actions and omissions described herein also constitute a violation of due process by governmental officials, in

violation of the United States Constitution and are actionable pursuant to **42 U.S.C. § 1983**.

49. Defendants respond jointly and severally to the plaintiffs for these violations, entitling plaintiffs to an award of compensatory damages, costs, interests and attorney fees.

50. Given the wanton and malicious actions and omissions as described herein, the plaintiffs are entitled to an award of punitive or exemplary damages.

### VII. SECOND CAUSE OF ACTION

51. Plaintiffs repeat and reallege each and every preceding paragraph of this complaint.

52. López' behavior above details actions whereby she intentionally accessed without authorization a facility through which an electronic communication service is provided, intentionally exceeding her level of authorization to access said facility, whereby she accessed and altered electronic communications, and further prevented subsequent legitimate and authorized access to said communications, while they were in electronic storage in such system or facility.

53. López' actions as outlined above violate the provisions of the **Stored Communications Act (SCA), 18 U.S.C. § 2701, et seq**, and the **Electronic Communications Privacy Act (ECPA), 18 U.S.C. § 2510, et seq**.

54. Co-defendants Camba, Rexach, and other still unknown GDB officials, facilitated López' actions, and further conspired with López to violate the SCA and ECPA.

55. The actions and omissions described herein also constitute a violation of due process by governmental officials, in violation of the United States Constitution and actionable pursuant to **42 U.S.C. § 1983**.

56. Defendants respond jointly and severally to the plaintiffs for these violations, entitling plaintiffs to an award of compensatory damages, costs, interests and attorney fees.

57. Given the wanton and malicious actions and omissions as described herein, the plaintiffs are entitled to an award of punitive or exemplary damages.

### VIII. THIRD CAUSE OF ACTION

58. Plaintiffs repeat and reallege each and every preceding paragraph of this complaint.

59. López actions above resulted in the culpable destruction of relevant evidence in the litigation of both cases before the United States District Court for Puerto Rico, 09-01151-JP, and 09-2199-FAB.

60. Said destruction of relevant evidence was motivated by bad faith, to intentionally hide evidence that would have been adverse to the interests of all co-defendants in said litigation, and in flagrant disregard of the duty to preserve, supervise, and monitor the condition of material evidence.

61. The actions and omissions described herein constitute a tort of intentional spoliation under the Constitution and laws of the Commonwealth of Puerto Rico, for which the defendants respond to the plaintiffs in compensatory damages, pursuant to

**Articles 1802 and 1803 of the Civil Code of Puerto Rico.** This Court has supplemental jurisdiction to hear and adjudicate these claims arising from the same nucleus of operative facts, and to hear and adjudicate any such claim this court may deem to be brought on behalf of a pendent party to this action.

62. Defendants respond jointly and severally to the plaintiffs for these violations, entitling plaintiffs to an award of compensatory damages, costs, interests and attorney fees.

63. The actions and omissions described herein further constitute obstruction of justice, and are actionable pursuant to **42 U.S.C. § 1985.**

## IX. PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs request the following relief, jointly and severally, against all defendants:

64. That this court determine that the actions by all defendants were in violation of the Constitution and laws of the United States and of Puerto Rico;

65. That the court award plaintiffs compensatory damages and punitive damages in excess of $1,500,000.00, which request for compensation is made up of the following amounts:

   a) $500,000.00 in compensatory damages for the harm done in violation of her constitutional rights;

   b) $500,000.00 in compensatory damages for physical and emotional suffering;

   c) $500,000.00 in punitive damages due to the malicious and wanton nature of the violations alleged herein.

66. That Rodríguez be provided with the costs of this action, as well as statutory attorneys' fees and litigation expenses;

67. That the court provide for payment of all applicable interests, including prejudgment interest if indicated;

68. That plaintiffs be granted such other and further relief as the Court may deem appropriate and proper and retain jurisdiction over this action in order to assure full compliance with any decree issued by this court.

**Submitted** in New York, New York, this 4th day of August, 2010.

S/William E. Meléndez Menéndez
**William E. Meléndez Menéndez**
USDC PR No. 226902

Attorney for Debtor
410 Park Avenue 15th Floor, Suite # 1233
New York, New York 10022
Tel. (718) 725-7387
We.Melendez@e-Lex.us


**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties in interest.

**In New York, New York, this 4th day of August, 2010.**

S/William E. Meléndez Menéndez
**William E. Meléndez Menéndez**
USDC PR No. 226902